Electronically Filed - Clay - June 23, 2020 - 02:17 PM

## IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

| | | |
|---|---|---|
| STEPHEN H. POPE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | **Division No.:** |
| | ) | |
| TEMP-CON, LLC, | ) | |
| | ) | **REQUEST FOR JURY TRIAL** |
| **Defendant.** | ) | |

Serve: Resident Agent:
      MBC Business Services, Inc.
      4510 Belleview Ave., Ste. #300
      Kansas City, MO 64111

### PETITION FOR DAMAGES

COMES NOW Plaintiff, Stephen H. Pope, by and through counsel Daniel L. Doyle, and for his Petition against the above-named Defendant, alleges and states as follows:

1.    Plaintiff, Stephen H. Pope ("Plaintiff"), is an individual residing at 4338 North Central Avenue, Kansas City, Clay County, Missouri.

2.    Defendant, Temp-Con, LLC ("Defendant"), is a Delaware Limited Liability Company, in good standing, doing business at 15670 South Keeler Street, Olathe, Kansas, 66062.

3.    Defendant is properly registered and in good standing with the Missouri Secretary of State to do business in Missouri.

4.    Defendant regularly provides HVAC installation and service to customers in Clay County, Missouri

5.    This case involves the intentional tort of wrongful discharge in violation of public policy under Kansas common law.

6.    Plaintiff was hired by Defendant in Kansas.

**EXHIBIT A**

7.     Plaintiff suffered a work-related injury in Overland Park, Johnson County, Kansas.

8.     Plaintiff exercised rights granted by the Kansas Workers Compensation Act.

9.     Plaintiff was discharged from employment by Defendant while Plaintiff was at home in Kansas City, Clay County, Missouri.

10.    These facts make jurisdiction and venue of this case proper in Clay County, Missouri and in this Court.

11.    Defendant is a covered "employer" under the Kansas Workers Compensation Act.

## RETALIATION IN VIOLATION OF PUBLIC POLICY
### (KANSAS COMMON LAW)

12.    Plaintiff was hired by Defendant on or about October 15, 2016.

13.    Plaintiff began employment as a job-site foreman for Defendant's HVAC installation and service business.

14.    On or about August 14, 2019, while in the course and scope of his employment, Plaintiff suffered an injury.

15.    Plaintiff and a co-worker, James Dupinac ("Dupinac"), were lifting a heavy, burlap bag full of construction debris into a dumpster when Plaintiff experienced intense pain in his right shoulder.

16.    Plaintiff's reaction to the pain was audible, and Dupinac asked if Plaintiff was okay.

17.    Plaintiff responded, "I don't know, that really hurt."

18.    Plaintiff continued to work in pain until the end of his shift.

**EXHIBIT A**

Electronically Filed - Clay - June 23, 2020 - 02:17 PM

19.     Plaintiff awoke the next morning, August 15, 2019, with dull, manageable pain presenting in his neck and shoulder.

20.     Plaintiff worked his shift on August 15, 2019.

21.     Plaintiff awoke the morning of August 16, 2019 and was still in pain.

22.     That morning, Plaintiff texted his supervisor, Project Manager Mike Curtis ("Curtis") on the phone he was issued by Defendant.

23.     Plaintiff informed Curtis that he had been injured, on the job, on August 14, 2019.

24.     Plaintiff informed Curtis that he was experiencing pain as a result of his work-related injury.

25.     Plaintiff informed Curtis that he needed to go to the doctor as a result of his work-related injury.

26.     Curtis responded by text with "Okay, but go on out there [referencing the job site] because you're the only one that knows what is going on and *just take it easy*."

27.     On August 16, 2019, after speaking to Curtis via text message, Plaintiff arrived at the jobsite at his scheduled start time of 7:00 A.M.

28.     Plaintiff worked, in pain, until lunch.

29.     After lunch, Plaintiff went to North Kansas City Hospital ("NKC") to have his neck and shoulder evaluated.

30.     After Plaintiff was processed by the NKC Emergency Department, he was ushered to an examination room.

31.     While waiting to be examined, an employee of NKC came into the room and told Plaintiff that he needed to call Heather Smith ("Smith"), Defendant's Executive Assistant.

**EXHIBIT A**

32.     Plaintiff called Smith in the presence of NKC staff.

33.     Upon information and belief, NKC staff was able to hear both sides of the phone conversation between Plaintiff and Smith.

34.     Smith asked Plaintiff if he had a primary care physician.

35.     Plaintiff responded no.

36.     Smith told Plaintiff that he needed to leave the hospital immediately.

37.     In pain and worried about obtaining relief for his pain, Plaintiff asked why.

38.     Smith explained to Plaintiff that workers' compensation works on a point system.

39.     Smith told Plaintiff that if Defendant got any more points they would not be eligible to bid for certain jobs.

40.     Smith told Plaintiff that "we [Defendant] have too many points for you to use our Work Comp."

41.     Smith told Plaintiff that the hospital would be way too expensive.

42.     Smith told Plaintiff that Defendant wanted to send him to a cheaper healthcare provider.

43.     Alternatively, Smith told Plaintiff that he could pick his own doctor and Defendant would reimburse Plaintiff.

44.     The hospital staff tried to dissuade Plaintiff from leaving NKC.

45.     The hospital staff expressed to Plaintiff their disapproval of Smith's message and instructions.

46.     Plaintiff left NKC and made an appointment at NextCare Urgent Care ("NextCare") at 10015 North Ambassador Drive, Kansas City, MO 64153.

47.     On or about August 18, 2019, Plaintiff went to his appointment at NextCare.

4

**EXHIBIT A**

48.     NextCare performed an X-ray and told Plaintiff that the distance between the bones were in good shape.

49.     NextCare told Plaintiff that he would need to get an MRI for further diagnosis.

50.     NextCare explained to Plaintiff that scheduling an MRI was not as straightforward as just putting it on the books, and Plaintiff would need to go through "the protocol."

51.     NextCare diagnosed Plaintiff with a right shoulder strain and a neck strain or sprain.

52.     NextCare treated Plaintiff with a shot of anti-inflammatory medication and provided prescriptions for a pain killer and a muscle relaxer.

53.      NextCare also recommended rehab exercises, which were provided in the paperwork provided to Plaintiff.

54.     Plaintiff returned to work for his next scheduled shift on August 19, 2017.

55.     That morning, Plaintiff sent his receipt from the August 18 NextCare visit to Smith.

56.     Shortly thereafter, Smith called Plaintiff to discuss an arrangement for reimbursing Plaintiff for his personal payments to NextCare.

57.     Shortly after his injury, Plaintiff was moved to a crew working on a project in Kansas City, Jackson County, Missouri.

58.     Plaintiff continued to work in pain through August, September, and October.

59.     During this period of time, Defendant informed Plaintiff to, simply, "do what you can."

**EXHIBIT A**

60.     During these months, Plaintiff sought and received acupuncture treatment, physical therapy, and pressure point therapy for his work-related injury for which Plaintiff paid.

61.     Unable to fully contribute to the crew's completion of on-site tasks, Defendant's employees began to ridicule Plaintiff.

62.     As a result of the limitations caused by Plaintiff's injury, Defendant's employees ridiculed Plaintiff for not pulling his weight.

63.     During this time, Plaintiff's pain increased in frequency and severity.

64.     On October 22, 2019, Plaintiff was driving to the job site when his pain became so intense it actually affected his vision.

65.     Due to the pain, Plaintiff had to pull over his work van and cease driving for fear of losing control of his vehicle.

66.     Plaintiff contacted Curtis to inform him that Plaintiff would not be arriving at the job site at the normal time.

67.     Plaintiff informed Curtis and Smith that he had to seek medical treatment due to the intensity of the pain he was currently experiencing.

68.     Plaintiff went to Meritas Health Gashland ("Meritas") for treatment.

69.     Upon intake, Plaintiff informed Meritas that his injury was work related.

70.     Meritas told Plaintiff that since it was a work-related injury they would not be able to provide treatment.

71.     Meritas informed Plaintiff that he would need to speak to Defendant about getting treatment from an authorized treatment provider.

72.     Meritas recommended nerve conduction studies, EMGs, and an MRI of Plaintiff's neck.

**EXHIBIT A**

73.     Plaintiff returned to his van and sent a text message to Smith, Curtis, and vice president, John Clark.

74.     Plaintiff's text informed Smith, Curtis, and Clark that Plaintiff needed treatment for his work-related injury.

75.     Plaintiff also expressed his desire to take time off and disability pay for his recovery.

76.     Plaintiff informed Defendant that the pain had become so severe that he was not even able to drive a vehicle.

77.     Plaintiff was ultimately denied short-term disability pay because it was a work-related injury.

78.     Later on October 22, 2019, Plaintiff drove to Defendant's offices located in Olathe and met with Smith.

79.     Smith told Plaintiff not to worry, to go home, rest, and get better.

80.     Smith told Plaintiff that Defendant would reimburse Plaintiff for Plaintiff's chiropractic treatment.

81.     Defendant has never reimbursed Plaintiff for costs incurred for the chiropractic treatment.

82.     Smith also told Plaintiff that Defendant would get Plaintiff "set up" with Concentra and physical therapy, which started the next day.

83.     On or about October 23, 2019, Plaintiff went to Concentra Medical Centers located at 14809 West 95th Street, Lenexa, Kansas 66215 for treatment.

84.     Plaintiff was diagnosed with radiculopathy in cervical region – M54.12.

EXHIBIT A

Electronically Filed - Clay - June 23, 2020 - 02:17 PM

85.     Plaintiff visited Concentra on October 23, October 25, October 30, October 31, November 1, November 4, November 6, November 13, and November 20, and November 29.

86.     During this time, Plaintiff also attended all of his scheduled physical therapy sessions.

87.     Concentra provided Plaintiff with restrictions in each Physician Work Activity Status Report ("Status Report").

88.     Plaintiff was consistently provided the following work restrictions:

a)     May lift up to 20lbs constantly;

b)     May push/pull up to 20lbs constantly;

c)     No reaching above shoulders with affected extremities;

d)     No reaching above head with affected extremities;

e)     No climbing ladders.

89.     Plaintiff's restrictions prevented him from performing his job duties..

90.     After each visit, Plaintiff provided Defendant with Concentra's Status Report via text message to Smith and Clark.

91.     In early November, having not been provided either light duty nor feedback regarding Plaintiff's work status, Plaintiff called Smith to ask if she and Clark had been receiving Plaintiff's Status Reports.

92.     Smith informed Plaintiff that Concentra was providing the Status Reports to Defendant via email, and Plaintiff did not need to continue sending the documentation.

93.     Defendant never provided nor even offered light duty work in accordance with Plaintiff's work restrictions.

**EXHIBIT A**

Electronically Filed - Clay - June 23, 2020 - 02:17 PM

94. From October 23 and throughout November 2019, Plaintiff abided by Defendant's instruction to rest.

95. Throughout the treatment period with Concentra, Plaintiff was informed on several occasions that Concentra had requested authorization for an MRI.

96. Concentra informed Plaintiff that Defendant had denied the MRI request each time.

97. On or about November 16, 2019, Plaintiff was informed that Defendant had finally approved the MRI.

98. Plaintiff's MRI was scheduled for November 23, 2019 at 8:30 p.m.

99. Plaintiff was informed that because he worked with metal he would need to have an orbit X-ray to check for the presence of metal fragments in his eyes and ocular cavities.

100. On or about November 22, 2019, Plaintiff underwent an orbit X-ray and was cleared for the MRI.

101. On or about November 23, 2019 at approximately 8:00 p.m., Plaintiff received a text message that his MRI, which was to take place 30 minutes from the time of the text, had been cancelled.

102. On or about December 4, 2019, Plaintiff received a call from Smith.

103. Smith informed Plaintiff that Defendant would be coming to get Defendant's work van which was in the possession of Plaintiff.

104. Plaintiff asked Smith why Plaintiff's MRIs were being denied.

105. Smith responded, "I don't have anything more to do with that Steve, sorry."

106. Later that day, Defendant's Warehouse Manager, Matt McCullum, arrived at Plaintiff's house, requested the keys to the van, and requested Plaintiff's work phone.

EXHIBIT A

PM

107.     Plaintiff stated to McCullum, "I guess they're canning my ass then?"

108.     McCullum chuckled, "I guess so."

109.     Plaintiff then told McCullum that McCullum should be careful because Defendant would use the same tactics on McCullum if he ever got hurt.

110.     Plaintiff was referring to Defendant's denial of treatment and the termination of Plaintiff for invoking workers' compensation rights.

111.     McCullum simply replied, "Oh I know."

112.     On or about October 7, 2019, Plaintiff received a letter from Defendant, dated December 4, 2019, stating that due to Plaintiff's failure to meet Defendant's monthly minimum work hours for the month of November, Plaintiff's health benefits had been terminated on November 30, 2019.

113.     In or about December 2019, Plaintiff hired a workers' compensation attorney.

114.     Plaintiff's workers' compensation attorney immediately took steps to force Defendant to provide medical care for the work-related injury.

115.     On or about February 20, 2020, Plaintiff's Cervical Spine MRI was approved by Defendant's workers' compensation insurer.

116.     Finally, on or about March 4, 2020, Plaintiff received a Cervical Spine MRI.

117.     On or about March 9, 2020, Defendant's workers' compensation insurer sent Plaintiff to Dr. David Clymer for an Independent Medical Exam.

118.     Dr. Clymer reported that Plaintiff's clinical and radiographic findings were consistent with disc herniations principally at C5-6 toward the right side and C6-7 toward the left side.

EXHIBIT A

119. Dr. Clymer also reported that Plaintiff's injury was "related to the work place event."

120. Dr. Clymer recommended evaluation and treatment by a neurosurgeon.

121. On or about April 15, 2020, Plaintiff was referred by Defendant to Dr. Adrian P. Jackson, a neurosurgeon.

122. Dr. Jackson noted nerve impingement at the same location identified by Dr. Clymer.

123. Dr. Jackson determined that the work related injury was the prevailing factor with regards to Plaintiff's current spine clinical condition.

124. Dr. Jackson recommended epidural steroid injections and physical therapy as an initial treatment.

125. Dr. Jackson has indicated that next treatment steps will include C5-7 Anterior Cervical Discectomy and Fusion ("ACDF") surgery to address Plaintiff's condition.

126. Dr. Jackson provided the following restrictions for Plaintiff:

    a) No lifting more than 15 pounds;

    b) No repetitive bending, twisting, lifting, or kneeling;

    c) Alternate standing and sitting activity each hour as needed;

    d) No work at or above shoulder height; and

    e) No ladders or climbing.

127. On or about May 15, Plaintiff received his first epidural steroid injection.

128. On or about May 21, Plaintiff received his second epidural steroid injection.

129. Despite some effectiveness in treating the associated pain, Plaintiff's right arm is constantly numb, and his left arm is nearly always in great pain.

**EXHIBIT A**

130.     Plaintiff has a Preliminary Hearing scheduled for June 24, 2020 in his underlying Kansas workers' compensation claim.

131.     Plaintiff exercised rights granted by the Kansas Workers Compensation Act.

132.     Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment.

133.     Defendant's adverse employment actions taken against Plaintiff were based upon, and directly related to, Plaintiff exercising his rights for workers' compensation benefits.

134.     Defendant's adverse employment actions against Plaintiff violate State public policy clearly declared by the Courts and the Kansas Legislature.

135.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

136.     Defendant acted toward Plaintiff with willful conduct, wanton conduct, or malice.

137.     Thus, an award of punitive and exemplary damages in appropriate.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant in an amount in excess of $75,000, for compensatory damages, punitive damages, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

EXHIBIT A

Plaintiff demands a trial by jury in the Circuit Court of Clay County, Missouri on all of the allegations of wrongful conduct alleged in this Petition for Damages.

Respectfully submitted,

_/s/ Daniel L. Doyle_
Daniel L. Doyle, MO Bar No. 37305
Doyle & Associates LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 371-1930, ext. 109
Facsimile:  (913) 371-0147
d.doyle@ddoylelaw.com
ATTORNEY FOR PLAINTIFF

**EXHIBIT A**

Electronically Filed - Clay - June 23, 2020 - 02:17 PM

## IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

| | | |
|---|---|---|
| **STEPHEN H. POPE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | **Division No.:** |
| | ) | |
| **TEMP-CON, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>MOTION FOR APPROVAL AND APPOINTMENT OF SPECIAL PROCESS SERVER</u>

COMES NOW Plaintiff and requests an order appointing Special Process Servers employed by/or an Agent of HPS Process Service & Investigations, Inc.: Jan Adams, Roger Adams, Joseph Baska, Fidel Cervantes, Dennis Dahlberg, Mary Dahlberg, Robert Finley, Darnell Hamilton, Grace Hazell, Michael Hibler, Martin Hueckel, JoAnn Lane, Joni Lane, Robert Manning, Susie Martin, Michael McMahon, Jenna Mendoza, Trinity Olson, Angela Reed, Christopher Reed, Cheryl Richey, David Roberts, Nathaniel Scott, Christina Tiffany, Robert E. Vick, II, Brad Votaw, Ariel Wilson and Jerry Wooten of HPS Process Service & Investigations, Inc., as special process servers in the above-captioned matter to serve Petition and Summons on Defendant for the reason that it is more convenient for Plaintiff.

06/23/2020

Date

Respectfully submitted,

/s/ Daniel L. Doyle

Daniel L. Doyle, MO Bar No. 37305
Noah Ballard, MO Bar No. 69953
Robert A. Bruce, MO Bar No. 69985
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930, ext. 109
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
n.ballard@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF

**EXHIBIT A**

Electronically Filed - Clay - June 23, 2020 - 02:17 PM

## IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

| | | |
|---|---|---|
| **STEPHEN H. POPE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | **Division No.:** |
| | ) | |
| **TEMP-CON, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER APPOINTING SPECIAL PROCESS SERVER

    It is hereby ordered that Plaintiff's Motion for Order Appointing Special Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

CLAY COUNTY CIRCUIT CLERK

_____            _____

Date                                            By Deputy Clerk

**EXHIBIT A**



# IN THE 7TH JUDICIAL CIRCUIT COURT, CLAY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JANET SUTTON | Case Number: 20CY-CV05248 |
| Plaintiff/Petitioner:<br>STEPHEN H. POPE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL L DOYLE<br>748 Ann Avenue<br>KANSAS CITY, KS 66101 |
| Defendant/Respondent:<br>TEMP-CON, LLC | Court Address:<br>11 S WATER<br>LIBERTY, MO 64068 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: **TEMP-CON, LLC**
                     **Alias:**

**15670 S. KEELER STREET**
**OLATHE, KS 66062**

*COURT SEAL OF*

*CLAY COUNTY*

        You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

           6/24/2020
             Date                                    Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____.

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

        **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
        I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                      ☐ the judge of the court of which affiant is an officer.
*(Seal)*              ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                      ☐ authorized to administer oaths. (use for court-appointed server)

                                         _____
                                         Signature and Title

| **Service Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

**See the following page for directions to clerk and to officer making return on service of summons.**

OSCA (7-04) SM60 *For Court Use Only* Document ID# 20-SMOS-77    1 of 2    (20CY-CV05248)    Rules 54.06, 54.07, 54.14, 54.20;
CLAY (2-11) (SMOSCY)                                               506.500, 506.510 RSMo

Case 4:20-cv-00587-DGK    Document 1-1    Filed 07/24/20    Page 16 of 20

**EXHIBIT A**

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 *For Court Use Only: Document ID#: 20-SMOS-77*  2  of  2  (20CY-CV05248)  Rules 54.06, 54.07, 54.14, 54.20; 506.500, .510 Mo
CLAY (2-11) (SMOSCY)

Case 4:20-cv-00587-DGK   Document 1-1   Filed 07/24/20   Page 17 of 20

EXHIBIT A

Electronically Filed - Clay - June 23, 2020 - 02:17 PM

## IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

| | | |
|---|---|---|
| **STEPHEN H. POPE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | **Division No.:** |
| | ) | |
| **TEMP-CON, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER APPOINTING SPECIAL PROCESS SERVER

It is hereby ordered that Plaintiff's Motion for Order Appointing Special Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

CLAY COUNTY CIRCUIT CLERK

JUNE 24, 2020
_____
Date

_____ [signature]
By Deputy Clerk



COURT SEAL OF

CLAY COUNTY

**EXHIBIT A**

## AFFIDAVIT OF SERVICE

**State of Missouri**                    County of Clay                    Circuit Court

Case Number: 20CY-CV05248

Plaintiff/Petitioner:
**STEPHEN H. POPE**

vs.

Defendant/Respondent:
**TEMP-CON, LLC.**

Received by HPS Process Service & Investigations to be served on **Temp-Con, LLC c/o MBC Business Services, Inc., 4510 Belleview Avenue, Suite 300, Kansas City, MO 64111.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **25th day of June, 2020** at **10:30 am, I:**

Served the within named establishment by delivering a true copy of **Summons for Personal Service Outside the State of Missouri; Petition for Damages; Motion and Order Appointing Special Process Server** to Becky Ziegler, Secretary at the address of **4510 Belleview Avenue, Suite 300, Kansas City, MO 64111.**

I am over the age of eighteen, and have no interest in the above action.

**NATHANIEL SCOTT**
Process Server

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

Subscribed and Sworn to before me on the _____ day
of _____ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #1____

NOTARY PUBLIC
NOTARY
SEAL
STATE OF MISSOURI

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Our Job Serial Number: HAT-2020011706

**EXHIBIT A**



## IN THE 7TH JUDICIAL CIRCUIT COURT, CLAY COUNTY, MISSOURI

| Judge or Division:<br>JANET SUTTON | Case Number: **20CY-CV05248** |
|---|---|
| Plaintiff/Petitioner:<br>STEPHEN H. POPE | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL L DOYLE<br>748 Ann Avenue<br>KANSAS CITY, KS 66101 |
| vs. | |
| Defendant/Respondent:<br>TEMP-CON, LLC | Court Address:<br>11 S WATER<br>LIBERTY, MO 64068 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: TEMP-CON, LLC
Alias:

**15670 S. KEELER STREET**
**OLATHE, KS 66062**

*COURT SEAL OF*

*CLAY COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____6/24/2020_____     _____ _Orly Simpson_ _____
Date                              Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    - [ ] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    - [x] (for service on a corporation) delivering a copy of the summons and a copy of the petition to
      _Becky Ziegler_ (name) _Secretary_ (title).
    - [ ] other (describe)

Served at _4610 Belleview Ave. Ste.300 Kansas City, MO 64111_ (address)
in _Jackson_ County, _Missouri_ (state), on _6.25.2020_ (date) at _10:30 A.M._ (time).
_Nathaniel Scott_                         _Nat SR PPS._
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _26_ (day) _June_ (month) _2020_ (year)
I am: (check one)   - [ ] the clerk of the court of which affiant is an officer.
                    - [ ] the judge of the court of which affiant is an officer.
                    - [ ] authorized to administer oaths in the state in which the affiant served the above summons.
                    - [x] authorized to administer oaths. (use for court appointed server)
X _____
                                          Signature and Title

*(Seal)* A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #13452192

*NOTARY PUBLIC*
*NOTARY SEAL*

| Service Fees, if applicable | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| **Total** | $ _____ |

See the following page for directions to clerk and to officer making return on service of summons.

**EXHIBIT A**